Good morning. I apologize for being just a few minutes late here. We have two cases that will be argued this morning. The first is No. 12-2283. Wilson, the Secretary of Pennsylvania Dept. of Corrections and Bond, Mr. Weissman, and Mr. Dolginus. I keep pronouncing it. How do I pronounce it? Dolginus. Dolginus. Got it. Mr. Weissman, whenever you're ready. Thank you, Your Honor. Good morning. May it please the Court. By the way, you would think after all this many times I would get it right. No. The answer is no. Sorry. Good morning. May it please the Court. My name is Dolginus, instead of an S. Instead of my Weiss. No, no. Weiss. Weissman. And I represent Mr. Wilson. If I could, I'd like to reserve three minutes for rebuttal. All right. You're going to make us wise when we're done here, then. Hopefully. Your Honors, there are two primary issues that I'd like to address. One is exhaustion, and the other is the prejudice resulting from the delay in this case. I'd like to talk about jurisdiction first. Let me ask you this question. Obviously, you agree with the proposition that at some point the district court's divested of subject matter jurisdiction in the habeas once the writ's granted, right? Correct. Okay. My question to you is, what is that point? Obviously, there's a question here because of the lack of a vacature order and so forth. I'd like your view on that. Sure. I can't tell you precisely when the jurisdiction of the district court ends. I can tell you that when a petitioner files a Rule 60B motion in a habeas case, the court has jurisdiction to adjudicate that motion. Let me give you a hypothetical. Let's say a vacature order had been entered here. In the state court. Right. The writ's granted. As a consequence of the writ, a vacature order is entered in the state court. At that point, hasn't the constitutional issues that the petitioner has raised in federal court now been resolved, and therefore the federal court should be divested of jurisdiction? Yeah. Not to sound like a lawyer, but it depends. What it depends on is the nature of the Rule 60B. For example, we can all agree that if Mr. Wilson's claim was that he couldn't be retried because of a double jeopardy claim, then no one would argue, I don't think anyone would disagree, that the district court would have jurisdiction on a subsequently filed Rule 60B. Subsequently filed. But I'm talking about within the same framework of the same case that was filed. Obviously, there can be subsequently filed habeases on different bases. But I'm talking about in the same one that's filed, constitutional claim is raised. Right. It's resolved. A vacature order is entered on the state court docket. At that point in time, isn't the district court divested of all jurisdiction? I still believe that the answer to that question depends on whether the 60B motion is a properly framed 60B motion. If it's not, if it's like the case Pritchett v. Davis where the 60B motion sought an intrusive intervention into the minutia of how the state court was going about retrying the petitioner, then I would agree that there might not be jurisdiction. That's not this case. So if the 60B motion speaks to the constitutional issue that was resolved in the habeas, then you would say the district court retained jurisdiction? Not necessarily. The line of cases I'm relying on, Satterley and D'Ambrosio, carve out an area where if there are extraordinary circumstances, and the question I think before this court is whether those extraordinary circumstances existed. If there are extraordinary circumstances brought to the district court in a 60B motion, the district court has jurisdiction to entertain that. Now, there's all kinds of hypotheticals. I'm not sure I can answer all of them, but certainly our view is that we had extraordinary circumstances. Therefore, Judge Dover had jurisdiction regardless of whether the state court vacated the conviction. But it's pretty clear that the state court did vacate the conviction, didn't it? Ultimately, they did. And so why doesn't Pitchess, how do you get around Pitchess? Pitchess is a case where the litigant was back in the state court, had had hearings in the state court, discovered a brand new Brady violation arguably, and then went back to the federal district court. We're different than that because nothing happened in the state court except they brought Mr. Wilson back to the state court and arraigned him. That started the process. Two days later, we were back in front of Judge Padova complaining about that. So we're not asking the federal district court to intervene into the minutia of the retrial. In other words, we're not coming back to Judge Padova. Why isn't rearrangement a point in time when the district court, the federal district court, no longer has jurisdiction? Well, because we had no inkling that they were ever going to bring... What if they waited 30 years and then brought Mr. Wilson back to the state court? Well, you still have your delay... I'm sorry? You still have a delay argument, but then... In the state court. Now we have the exhaustion. And that's why I think we get back to my initial response, which is that it depends on the nature of the Rule 60B. Satterley, again, which we're relying on, which Judge Padova acknowledged, says that in extraordinary circumstances, such as when the state inexcusably, repeatedly, or otherwise abusively fails to act within the prescribed time period, or if the state delay is likely to produce prejudice, then the district court has a 28 of the appendix. So are you saying that under your view of Satterley, any time after 180 days you'd have this argument? Well, what I was about to say at the very beginning is this is not a case where we ran into Judge Padova on day 181 and said, you know, tab, you're it. This is five and a half years. And I think that's a qualitative difference. No question but that we don't have a right to bar re-prosecution simply because the time frame within the conditional writ was violated. And that's what distinguishes this case from the 10th and 11th Circuit cases that Judge Padova relied on his opinion at Appendix 19 and 20. Those cases, you know, it was like day 61 and the conditional writ was 60 days. The litigant went in and said, ah, that's it, you blew your time frame, you can't re-prosecute. This is a qualitatively different situation. The question, you know, habeas is about equity. And the equitable question... All right, it's a matter of degree, clearly. Yes. This isn't day 181, five years is a matter of degree, quite different. Correct. But why is it a difference in kind? One of your arguments is that your speedy trial right is violated. You want us to say that your client... I'm sorry, that's not our position. We have never framed this as a speedy trial claim. That is what my opponent has framed it as. That's how Judge Padova saw it. We don't see it as a speedy trial claim. We see it as an extraordinary circumstance under Rule 60, a tactical decision made by the prosecutor. All right, but part of the extraordinary circumstances include speedy trial, sort of within that, includes competency issues, correct? Well, that's our prejudice. A witness, both your client and a witness who may have a competency issue, right? Right. Why can't the state court decide this? Well, certainly they, you know, I could present it to the state court, but that's not the claim before this court. We believe we have established extraordinary circumstances that gives the district court and this court jurisdiction to hear and adjudicate our claim that the Commonwealth engaged in. Really, this was a... All right, let's assume you're right. We have jurisdiction. We can hear it. But why should we adjudicate those matters when the state court has never even had an opportunity to? Because, as I was about to say, you know, at the heart of habeas corpus is equity. And when, you know, I cited Boumediene and the Commonwealth responded, that's an overstatement. And, you know, sure, Mr. Wilson wasn't kept at black sites and he wasn't intentionally tortured, but Mr. Wilson's embarking on his fourth decade of incarceration. And, you know, the fact that the Commonwealth made a decision, they decided, let's wait until the other case gets decided and we'll see if we have to retry him. And that's a tactical decision. My client, Mr. Wilson, who spent the bulk of his life in prison without a constitutional conviction, should not have to bear the prejudice that results from that. But, you know, you talked about before the nature of the 60B, you know, in our discussion at the beginning. Now, if the nature of the 60B is distinct from the underlying claim, which here was a Batson claim, then why should it, why shouldn't there be a point in time when the district court is divested of jurisdiction? Right. And the answer is there would be such a time. However, if the petitioner can establish extraordinary circumstances, as I believe we have, then it doesn't matter why Judge Padova initially granted the writ. It doesn't have to be that connection. So your view is extraordinary circumstances may have nothing to do with the original aegis of the case, right? Yeah, I mean, you know, what if they waited, you know, 30 years to bring him back? I mean, we couldn't, you know, we couldn't take a proactive role at this point prior to them bringing him into the state court. Frankly, I thought the case was over. I moved on to other stuff. Where's, you know, one of the things that we're often asked to do is line draw, right? So I think that based on Judge Hardiman's question, you agreed with the notion that, you know, on day 181, probably no claim. We're at, you know, whatever, day 1,800. Five and a half years. You know, whatever, you know, 1,000, whatever. When would you have no claim? Would it be, you know, a year's not that unreasonable, a year and a half? I think that's a call for the district court. Or are you saying we don't have to line draw and this is just unreasonable and that's where we are? No, no, no, not at all. I think that, you know, look, this case is about exhaustion in Judge Padova's eyes, and he never got to, in my view, he never got to the merits of the prejudice. Our view is, because habeas is equitable, you have to look at all the circumstances. You look at, how has Mr. Wilson been treated by the Commonwealth of Pennsylvania during his almost, or in excess of three decades of incarceration? What happened on his other case? Why did the five-year delay occur? Why did it happen in this case? Was it because they couldn't find him? Sometimes the prosecution can't find a defendant, and then you get into all kinds of questions of how that happened. We know the answer to that. If you hadn't had success on the second conviction, this would have sat in suspended animation. Right, and that's a perfectly fine position for Mr. Dolgen to take, but if his office takes that position, we shouldn't have to bear the result of that. We shouldn't have to then live with the fact that they decided, well, we don't really want to try this case unless we have to. Well, fine, then don't try it, but don't come back five years later and say, well, we're ready for trial. That's their decision. We shouldn't have to bear the brunt of that decision. When you talk about prejudice, I'd like you to tell us a little bit about that, because in your papers you talk both about your client's difficulties, which based on the record seems to be equivocal, because there seems to be some evidence in the record that your client isn't as bad cognitively as the picture might be painted. But also, Mr. Guest, because I wonder why Mr. Guest and his medical difficulties don't inure to your benefit. Well, addressing Mr. Wilson first, if you look at the appendix between 612 and 627, you will see Dr. Kessel's testimony regarding her review of the DOC records, and she says during the period of the delay, it is the first time that the Department of Corrections noted that Mr. Wilson was psychotic, and they gave him a baseline diagnosis of having a delusional disorder, and that happened during the period of delay. Now, whether he's competent or not is one question, but to say that he isn't more impaired than he was 30 years ago is quite another question. He clearly is. I don't think there could be any debate about it. It's in the DOC records. When were the recordings? I thought there were recordings of him that spoke to his lucidity in conversation. Yeah, yeah. Mr. Wilson, and it's hard to talk about this without separating my own personal experiences with him. He can talk about a lot of stuff. He understands I'm here today and what I'm arguing for, but if you talk to him about mental health, he'll respond at times talking about having snakes in his body. He'll talk about the arresting officer breaking into his cell and injecting him with poison. I've experienced all of those conversations with him, and he's an old man. And when the state judge hears all that, the state judge can say things like, okay, this is unfair, and I'm going to grant you the relief you seek. Sure. So really, I guess I'm challenging you with the notion that this isn't so much about a what, it's a who. In habeas, the federal courts aren't supposed to be the first line of relief. They're supposed to be the last. I get that. And that's why Younger v. Harris counsels this court to tread lightly, and I don't disagree with that, and that's why you don't see very many cases like this.  that say under circumstances like this, relief can be awarded. I do want to – I know I've gone way over. I do want to just make a couple of points. The issue, I think, for the court primarily, in addition to the jurisdiction that Judge Greenaway mentioned, is one of whether Judge Padova ruled only on exhaustion or whether he got to the merits of prejudice. Now, I just want to point out at A28, A36, and A39 of the appendix, you will see excerpts from Judge Padova's opinion where he intermingles exhaustion with his discussion of the merits. I don't believe there's a single finding of fact contrary to our assertions of prejudice. In each instance, he says, for example, at A36, we conclude the mental health concerns regarding Wilson do not present extraordinary circumstances that cannot be fairly addressed by the state courts. So he doesn't ever really separate out in his ruling prejudice from exhaustion. So I think the issue before this court is exhaustion. Judge Padova, with great respect for him, of course, was wrong in saying this had to be exhaustion. Let me just see if I can summarize here. You've got a conviction that resulted in it being overturned, a forbatsen issue here on this case, right? And there was a conditional habeas granted that you have 180 days either to retry or release. The reason he's not released is because there's another, the Lamb case is still pending, although on that case he had a Brady issue. So on this one, it looks as if, practically speaking, the Commonwealth prefers to go forward with Lamb. And let's see what happens here. Let's be efficient about it. And they wait a lot of time, and much more than you think should have happened. And therefore you have a claim that they just waited too long and they can't go back and retry with regard to the Swift case. But why, when you weigh federal-state relations, why is it that you don't let the state court have the first shot at that? Well, I think I tried to answer that. I think that the line of case is out of the Sixth Circuit. But I'm just talking practically speaking now. Oh, practically speaking? Practically speaking. Because Mr. Wilson cannot be made whole by requiring us to go back to state court. And he wins. We're talking about years more of delay. And frankly, if you were Mr. Wilson, would you want to put your faith in the courts that have treated you this way for over 30 years, denied your constitutional rights with impunity, and have you incarcerated all that time? The point is I don't know what the state courts would do. But at this point, back to Judge Greenaway's, you've got what you asked for. You've got a habeas, and the conviction was vacated at some point after 180 days, or at least in effect vacated. So, therefore, if they're going to go forward, they need to do something. But we're now back in state courts, are we not? Well, yes. On this matter. Yes, the case is in limbo, sorry, in the suspense in state court before the calendar judgment. That's correct, awaiting the resolution of the 60B motion. Yeah. Go ahead, Jeff. I mean, the concern that I've expressed is, and I think we all have, is there's got to be a point in time, regardless of the merits or substance of the 60B that's filed, that the federal courts are divested of jurisdiction, and you have to, as Judge Hardiman was pursuing, pursue your claim in state court. And I think the answer that you've given me is, it depends on what the nature of the 60B is, and, of course, the hypothetical I've given you is, if you obtain the relief that you sought in this case, it would be Batson relief, it could be whatever the relief that you sought was. If you've obtained the relief, doesn't that end, if you will, the relationship that you have on that hapeus in the federal courts, and you've got to start a cycle again? Yeah. And I think the answer is, and maybe I can answer it this way, I don't think that the simple fact that we got, well, it's not a simple fact, but the fact that we got the relief that we sought, and the fact that the state courts at some point vacated the conviction and rearranged Mr. Wilson does not by itself, all by itself, divest the federal courts of jurisdiction. It depends on the circumstances. And I've got to tell you, I've done a lot of research for this case, and I haven't found another case like it. You know, I was criticized in the briefing for not having, for only having cited one case. Well, you know, it's not every day that the prosecution intentionally waits five and a half years to retry a homicide client. You know, this is an unusual case. And I think it's an unusual case. It's not every day you win two habeas courts on homicide convictions. I don't know if that's ever happened before. You have the other case, too? Yes, I have. Wow. Yeah, yeah, yeah. Yeah, so, you know, it's an unusual case, and I think unusual cases, when you're talking about equity, deserve unusual consideration. Thank you. Thank you. We'll get you back, everybody. Hopefully, if I have some rebuttal left. No, we'll get you back. We'll get you back. Mr. Dolchanis. Good morning, Your Honors. Tom Dolchanis from the Philadelphia DA's Office for the Commonwealth Appellees. And just to get to that last point, I lost both cases. With help. Now you've got to do a makeup. The question in this case, when you get right down to it, is whether the Commonwealth can retry Zachary Wilson for the murder of David Swift in 1982. And obviously there have to be extraordinary circumstances for the federal courts to intervene into an ongoing state murder prosecution. It's our position that there's no such extraordinary circumstances here. There are a lot of points to cover. Maybe I'll just go right to the jurisdictional point. We have a lot of moving parts. All of these questions, I think, are interrelated. With respect to jurisdiction, the court asked at the beginning of the appeal here whether or not the district court had jurisdiction to adjudicate both the motion to enforce and the 60B motion. I think the question is moot with respect to the motion to enforce, because Mr. Wilson hasn't appealed that, and also because the district court held that the order wasn't violated, so there would be nothing to enforce. With respect to the 60B motion, as we said in our brief, we believe the district court did not have jurisdiction to hear what amounts to a violation in the 60B motion. And there's really two reasons for that. First, because the kind of allegation that Mr. Wilson makes now is a speedy trial type allegation that is, first, new and not related to the Batson claim on which relief was granted. And second, it's the kind of claim that state courts routinely handle as part of pretrial process. It's subject to exhaustion. If you read Edelman and Pitchess, those kinds of points, the exhaustion requirements can be read as jurisdictional. I don't understand that with Pitchess, because Pitchess seems to me to presume on the merits it went your way. I think it helps you on the merits, but on the jurisdictional question, it presumes the existence of jurisdiction. I can't find anything in the Supreme Court's opinion in that case that intimates that it did not have jurisdiction. Well, it's possibly that I'm over-reading it. But as I read Pitchess, if this type of claim, based on new conduct after the grant of the writ, is not the kind of claim that can be adjudicated in the 60B motion, then I interpret that as to be a jurisdictional point. Now, the United States Supreme Court does not use the word jurisdictional, and I could be over-reading it. In the last 10 years, the Court has really shrunk, right? I mean, they've been explicit that there's a distinction between claims, processing rules. And if there's not a statutory imperative almost, it's not a, strictly speaking, jurisdictional problem. Do you disagree with that? Well, habeas presents a special case, because remember that Rule 60B is always subordinate to the habeas, the grant of power to the federal courts to decide habeas claims. Gonzales v. Crosby talks a lot about this point, that if the Rule 60B only applies to habeas so long as it does not contradict the grant of power in the habeas statute. So to that point, it is a jurisdictional point. That is, if it's a kind of claim that is subject to the habeas rules, that it be presented in a different way. I would say it takes it out of 60B. 60B no longer applies. It is not an avenue which the claimant can take advantage of. So let me ask you this question. When you mentioned a moment ago that it depends and that here it's a new claim that is not related to Batson, right? Okay, so let's go back in time for a moment. Let's say it was not a new claim, right? So the following are the facts, right? You have in my hypothetical a vacuature order. We don't have one here. I get that. As a result of the vacuature order, there's a rearrangement, right? You find out some facts that now make you believe that a 60B order is appropriate. At the time of the vacuature order, and I'm talking about the state vacuature order, which essentially enforces the grant of the habeas, is the federal court divested of jurisdiction at that point? That's a very good hypothetical, Your Honor. I'm not sure of the answer to that question. I'm inclined to say that there might be circumstances in which the federal court is not divested of jurisdiction. Okay. At rearrangement, are you more certain? Certainly before rearrangement, the case for jurisdiction is better. After rearrangement, one would have to accept that the extraordinary circumstances doctrine could kind of reimpose jurisdiction over a case that might otherwise be settled. Okay. So then would you say that at a point in time after rearrangement, it would have to be, for in order for the federal court to have jurisdiction, it would have to be an instance where it would be a 60B motion with extraordinary circumstances related to the basis of the original habeas, and in the absence of that, there would be no jurisdiction? That's probably right, although I'd also say that in a case like that, if, for example, there had been some continuing Batson-type violation, I'm not sure exactly how that would work, but they say that the claim is the same, like in D'Ambrosio or something like that. I think in that case, maybe you don't have to get into the 60B stuff, because maybe then the motion to enforce is the way to go. Okay. Because the order itself has been violated. I mean, if you look at 60B, remember that usually under 60B, what you're doing is attacking something about the order itself. Here, there's no attack on the order, so from the very beginning, it's sort of an odd 60B motion. In a case like that, I guess it wouldn't be an attack on the order itself, but it would be an attack on compliance with the order, and then motion to enforce would be the more obvious way of doing it, which is the first thing that Mr. Wiseman filed in this case. Courts always have jurisdiction to enforce their own order. Yes. That's not necessarily to say that you'd win in that situation, but that would be, I think, the more obvious way to go. The second jurisdictional point I want to make, and this is, Judge Greenaway, you touched on this before. At the time Wilson filed the motions to enforce, and especially when he filed the 60B motion, we had complied with the order. Now, we complied in two ways. First, as Judge Cordova found, we never violated the order. And second, by the time these motions were filed, we'd re-arraigned Mr. Wilson. And that's the critical point. Under all the Sixth Circuit cases that seem to dominate the legal landscape here, D'Ambrosio, Edelman, Gertz, they talk about what's the moment in time where the re-arraignment took place. It's true that the motion to enforce was filed only two days after the re-arraignment took place. The 60B motion was filed many months after that. Jurisdiction is always technical, always depends on one date rather than another. That's the second reason why there's no jurisdiction here. Mr. Wilson relies on D'Ambrosio for his case. Are you saying that he's corrected? It's the same issue that you have involved on Habeas that you previously had with regard to the conditional grant of the writ. Well, I think there are a number of ways to distinguish D'Ambrosio. One is the jurisdictional point, but also, in D'Ambrosio, it was the same claim again. I think the writ was originally granted on Brady grounds, and there was a continuing Brady violation afterwards. So that's when we were getting into that situation, that this is a new claim. One point I want to make that I didn't really talk about very much in the brief is the standard of review. I think I understood Mr. Wiseman to accept that the district court did find, at least with respect to some of the questions, that there were no extraordinary circumstances which would justify suspension of the exhaustion requirement. I didn't understand that he was accepting that in his reply brief, but I think it's pretty clear if you read the opinion, that's a holding the district court makes. The standard of review there is an abuse of discretion standard, at least. And for that, you can look at Gibbs v. Frank, which I cite in our brief, which says that we review a district court's interpretation of its own order for abuse of discretion. The court has also characterized that holding more recently as the court gives great deference to a district court's interpretation of its own order. So Mr. Wilson faces a significant threshold to show that the delay in this case or the deterioration of evidence does, in fact, constitute an extraordinary circumstance even though the district court found otherwise. Let me just ask a point of clarification on that. As I understood Mr. Wiseman's argument, he's saying they don't have to exhaust because extraordinary circumstances exist. I understand your position would be that you don't get to the extraordinary circumstances analysis until you've already satisfied the exhaustion analysis. Is that your position? Yeah, I think exhaustion comes first because of the nature of these claims. And they're not interrelated? They're interrelated in that they depend on the same allegations. But the question is what box you put the allegations in when you first start looking at this. What the district court did was assume that there was a doctrine of extraordinary circumstances that could be satisfied hypothetically with these kinds of allegations and found that there were no extraordinary circumstances here that would justify suspension of the exhaustion requirement. Our position is just looking at the type of claims and the fact that they're new claims. Because it's new. Yes, that exhaustion would be first. Could you find extraordinary circumstances yet still impose the exhaustion requirement? Let's see now. I understand your position. Exhaustion comes first because it's speedy trial. He says it's reversed. So let's say the circumstances were even more extraordinary from his perspective than they are. They were clearly disturbing. That would be of no consequence if the claim for delay was the same. That is, if it's speedy trial, it doesn't matter how extraordinary the circumstances are. You'd have to exhaust before you could consider those on the merits. Right?  I think that is my position. I mean, it's hard for me to, no court has faced the kind of allegations that, you know, you're talking about that are speedy trial type allegations that are so egregious that they move into the category of extraordinary circumstances. And it's hard for me, you never want to say never, but it's hard for me to imagine those circumstances. And also remember that the worse that those circumstances are, the more likely it is that the claimant will get relief in state court. I mean, it's important to remember that the state court is a real court. We can't just assume the state court will do nothing to help the defendant or the claimant in a situation where he deserves relief. I mean, the way that the system is set up is that the state court is presumed to do its job. And that's part of the equation here that it's important not to forget. I just want to touch very briefly, unless the court has other questions, on the idea of compliance. You know, compliance with a conditional deadline means either retrying the defendant or that once the date has passed, the 180 days in this case, no longer holding the defendant pursuant to the old conviction. We obviously didn't try him within 180 days. We didn't hold him pursuant to the old conviction either, because what's really extraordinary about this case, and again this is something that came up, is that he had another death penalty case that had not been reversed and was not the reversal of which was not affirmed by this court until the end of 2009, at which time we moved fast back into common police court to wake up this case again. That is an extraordinary situation. And any time that Mr. Wiseman says or alleges that five and a half years, he says, true. You know, this is not a perfect world. Would you concede that if there were no Lamb case, that five and a half years would be extraordinary and that we should grant the relief that Mr. Wiseman seeks? I'm not sure I would, but I would say, I mean, because it depends. We have a lot of that today. It's true. I don't know how you can say that. He would have had to have been released on the 181st day. Absolutely. He was held for five and a half years, right? I misunderstood the question. The question, if he was still held pursuant to the old conviction after the 180 days as opposed to, you know, released and then rearrested. If he were released and rearrested three years later, he wouldn't be here. Right. Right. I, again, never say never, but I can't imagine somebody being held on the charge that was, you know, vacated and reversed by this court. Your whole case depends on the notion that he was being held on the other conviction. Yes. Absolutely. Thank you very much. Thank you. Mr. Wiseman, you may be up here for three minutes. Okay. I'll try to make a point. No, no problem. I know that the court is concerned about line drawing. I would suggest that sometimes it's better not to draw lines, and I would pose the following to you. If jurisdiction depends on the nature of the claim, nature of the 60B claim, and if extraordinary circumstances obviously depends on the nature of the 60B claim, then why not send it back to Judge Bedovin and say, if there's jurisdiction and if there are extraordinary circumstances, you should not have required exhaustion. Send it back to him with instructions that he should reconsider and make findings, because he hasn't made findings about the prejudice, as I pointed out earlier. Send it back to him and say, direct him to consider. What would you call what he said about both Mr. Gess and your client with regard to the respective mental capacity arguments? Well, I meant to spend more time on this, but if you look at the three sections that I quoted earlier, A36, A39, and A28 of the appendix, Judge Bedovin's opinion, in each instance where he's talking about the what would look like findings about mental health of both men, he says these are not such that the state courts can't adjudicate them. He never says, I find Mr. Wilson's competent. I don't find the deterioration in Mr. Gess's mental health. He never says that. He says these aren't extraordinary because the state courts can adjudicate them. The very nature of exhaustion is I'm not getting to the merits. You agree the state court is capable of adjudicating that, as I understand it. You concede that, but your argument is, gosh, the delay is so extreme here that any further delay is beyond the pale. And to further support the suggestion I just made, I think I noted at the time, it's not often Mr. Dulgeness and I agree on something. He agreed that jurisdiction, quote, depends. It depends on the nature of the claim. Send it back to Judge Bedova and say, yes, it does depend. All of these factors depend on the nature of the claims. Don't require exhaustion until you get and make findings about each of the aspects. But why is that a jurisdictional necessity? I don't understand the. Well, because I think. Because, I mean, the way I see it, I'm just putting my cards on the table, that the court can say simultaneously I have jurisdiction to hear this 60B motion, but because of reasons of comedy, the case law dictates that this state court take the first crack at this. Now, that could be very different. In a situation where the state court has already had a crack at it and failed and is showing some sort of obstreperousness, then you've got a different case. But here, these are new claims the state courts have never dealt with. I think I'm referring to the initial question I received from Judge Grimgold about, you know, why is there jurisdiction? And I think the answer you've been getting from both sides is jurisdiction depends on the nature of the claims. And you're correct that, you know, you could have jurisdiction, but still decide claims have to be exhausted. They are separate questions. Just two other very quick points. The standard overview on a 60B is an abuse of discretion. Obviously, if Judge Bedover was wrong on the law that these had to be exhausted, that would be an abuse of discretion. Extraordinary circumstances, I would submit to you, is a mixed question. And, again, he did not make specific findings about the prejudice, and therefore he did not make findings about that question. Last quick point, and I touched on this in my briefing, and I hope I don't sound too indignant or righteous about it, as I'm sometimes accused of being. But, you know, it's little solace to say Mr. Wilson was held on the Lamb case. The Lamb case was even worse than this case in terms of the constitutional violations. When you look at these two cases together, as I think it's appropriate to do when you're dealing with equity and when you're dealing with the presence of extraordinary circumstances, I take very little solace that, oh, well, he was held on this other case, oh, which, by the way, was wrapped with Brady violations, and for which he had a new trial, and for which he almost won recently, a nine-to-three on jury for acquittal. So I don't think that there's much to be gained by the Commonwealth by relying on the fact that he was being held on that other case. Thank you for your patience.  Thank you to both counsel for welcoming me.